■ EDWARD M. JOHNS et al., Appellants, et al., Plaintiff, v VILLAGE OF POTSDAM, Respondent, and RICK CASSARA, Individually and Doing Business as MORGAN's RESTAURANT, Appellant. — Appeals from an order and judgment of the Supreme Court at Special Term (Shea, J.), entered December 10, 1981 in St. Lawrence County, which granted defendant Village of Potsdam's motion to dismiss plaintiffs' complaint as against it and dismissed defendant Cassara's cross claim. On October 17, 1980 plaintiffs sustained personal injuries when a porch or balcony outside a third floor apartment located in a building owned by defendant Cassara collapsed, throwing plaintiffs 30 feet to the street below. Personal injury actions were commenced against both Cassara and the Village of Potsdam. Defendant Cassara cross-claimed against the village, alleging that any injury sustained by plaintiffs was the result of the village's negligence. Thereafter, defendant village moved to dismiss the complaint and cross claim on the ground that they failed to state a cause of action (CPLR 3211, subd [a], par 7) or, alternatively, for summary judgment (CPLR 3211, subd [c]). Plaintiffs cross-moved for discovery against defendant village (CPLR 3101). Special Term granted the village's motion and denied plaintiffs' cross motion. These appeals by plaintiffs and defendant Cassara ensued. We conclude that Special Term was correct in dismissing for failure to state a cause of action those portions of the complaint alleging negligence by the village in failing to enforce State and local statutes or to inspect as required by such laws. As in the case of an individual or private corporation, a municipality's liability must be premised upon the existence and breach of a duty flowing from the municipality to the plaintiff (*Motyka v City of Amsterdam,* 15 NY2d 134). Moreover, the duty breached must be more than a duty owing to the general public. There must exist a special relationship between the municipality and the plaintiff, resulting in the creation of a duty to use care for the benefit of a particular person or class of persons (*Florence v Goldberg,* 44 NY2d 189, 195). These legal principles speak directly to the issue of municipal duty posited by plaintiffs' complaint allegation, i.e., that the enactment of an Unsafe Building Law by defendant village (Local Laws, 1971, No. 2 of Village of Potsdam) created a special relationship such that a duty was owed by the village to plaintiffs which was breached, and constrain us to resolve that issue in favor of the village. Support for this holding is the case of *Mahoney v Town of Santa Clara* (89 AD2d 718, affd 58 NY2d 661), wherein it was held (p 719) that local ordinances relating to structures which are "deemed to be unsafe or dangerous *to the public*" do no more than provide general public safety protection. Here, the local law was enacted in regard to structures which "may now be or shall hereafter become dangerous or unsafe to the *public*" (emphasis added) (Local Laws, 1971, No. 2 of Village of Potsdam, § 2). Clearly, such language fails to create any duty, based upon a special relationship, running from defendant village to plaintiffs (see, also, *Gordon v Holt,* 65 AD2d 344, mot for lv to app

den 47 NY2d 710). Furthermore, the mere failure to enforce such an ordinance will not give rise to municipal liability (see, e.g., *Sanchez v Village of Liberty*, 42 NY2d 876; *Mahoney v Town of Santa Clara, supra*). Next, we also conclude that Special Term was correct in granting summary relief to defendant village with respect to those portions of the complaint that seek recovery on the theory that municipal liability results from the village's failure to abate an "inherently dangerous" condition. Here, unlike in *Runkel v Homelsky* (3 NY2d 857), wherein the court found municipal liability based upon the fact that the building involved was in imminent danger of collapse and the city was aware of this fact and failed to carry out its statutory duty to demolish the structure, defendant village not only had no knowledge of the dangerous condition of the balcony, it was under no statutory duty to inspect and demolish any dangerous structures (see, e.g., *Smullen v City of New York*, 28 NY2d 66). We reject plaintiffs' contention that the village might have acquired actual knowledge of the dangerous condition of the balcony by reason of the inspection of the premises by the village's fire chief sometime prior to the date of the accident. The fire chief states in his affidavit that "he generally observed fire hazards, exit doors and fire extinguishers. He did not observe or inspect the location or condition of the platorm [*sic*] or balcony that was attached to the front of the building". Subsequent to the accident the fire chief was shown photographs of the balcony and in his affidavit stated that "in his opinion as Fire Chief, he would consider that such balcony or platform did not constitute a fire excape [*sic*] since it had no stairs leading to the ground from its third floor location". This conclusion comports with both the dictionary definition of the phrase and the statutory definition of a "fire-escape" set forth in subdivision 16 of section 4 of the Multiple Residence Law, i.e., "[a] combination of outside balconies and *stairs* of incombustible materials, providing an unobstructed means of egress from a building" (emphasis added) (see, also, 9 NYCRR 1505.2). Since it is clear that the balcony was not a "fire escape", the failure of the fire chief to examine the balcony to determine its weight-carrying capacity and to inform the village did not violate subdivision 4 of section 303 of the Multiple Residence Law. Accordingly, defendant village was under no duty to abate or warn plaintiffs of the dangerous condition of the balcony and its failure to do so cannot invoke the "inherently dangerous" doctrine that would warrant denial of defendant village's motion for summary judgment. Order and judgment affirmed, with costs. Mahoney, P. J., Sweeney, Casey, Weiss and Levine, JJ., concur.